Sánchez Martínez, Juez Ponente
*1225 TEXTO COMPLETO DE LA SENTENCIA
El Fondo del Seguro del Estado adjudicó la convocatoria del puesto de Ejecutivo en Contratación I a favor de la señora Brenda Liz Martínez López. La señora Eva E. Meléndez Fraguada, quien había solicitado el puesto, impugnó la convocatoria ante la Junta de Apelaciones del Fondo, basándose en que el proceso de selección había sido pro forma y en que había sido discriminada por razones políticas. La señora Martínez López compareció a la Junta de Apelaciones como parte interventora.
La Junta de Apelaciones emitió una resolución parcial mediante la cual desestimó la apelación sobre impugnación de convocatoria en cuanto a la interventora, señora Martínez López, basándose en que ésta ya no ocupaba el puesto impugnado, sino uno distinto.
Posteriormente, la Junta de Apelaciones emitió otra resolución mediante la cual desestimó la apelación de Meléndez Fraguada y decretó su archivo con perjuicio, debido a que el recurso se había tomado académico, ya que el puesto impugnado se encontraba vacante.
Inconforme, la señora Meléndez Fraguada recurrió ante este Tribunal para solicitar la revocación de ambas resoluciones de la Junta de Apelaciones: la de academicidad (KLRA-2004-00208), y la de impugnación de convocatoria (KLRA-2004-00843). Consolidamos ambos recursos de revisión administrativa.
Por los fundamentos expuestos a continuación, se confirma la resolución que desestimó la apelación en cuanto a la parte interventora Martínez López, se revoca la resolución que desestimó y archivó con perjuicio la apelación Meléndez Fraguada y se devuelve el caso a la Junta de Apelaciones para la continuación de los procedimientos, conforme a lo aquí resuelto.
I
El 31 de julio de 2000, el Fondo del Seguro del Estado anunció la apertura de la Convocatoria 21, Gerencial, para el puesto de Ejecutivo en Contratación I, adscrito a la Oficina de Contratación. Los requisitos mínimos del puesto consistían en un bachillerato de una universidad acreditada y dos años de experiencia relacionada con la contratación de bienes y servicios o, en su lugar, una maestría, un Juris Doctor o un doctorado en medicina de una universidad reconocida.
La señora Eva Meléndez Fraguada ocupaba un puesto de Analista en Administración de Recursos Humanos *1226 IV en el Fondo. Ésta solicitó el puesto de la convocatoria para el puesto de Ejecutivo de Contratación I. El 7 de septiembre de 2000, la señora Meléndez Fraguada recibió una carta suscrita por la señora María del C. Viñas Torres, Jefa de la División de Reclutamiento, mediante la cual se le informó que se había seleccionado otro candidato para ocupar el puesto de la convocatoria.
El 6 de octubre de 2000, la señora Meléndez Fraguada impugnó la convocatoria, mediante carta dirigida al Administrador del Fondo, señor Juan A. Martínez. Ésta adujo que ella debió haber sido la candidata seleccionada, que había habido una violación en el procedimiento y selección del puesto de Ejecutivo de Contratación I, y que había sido discriminada por razones políticas al pertenecer al Partido Popular Democrático.
El 11 de enero de 2001, la señora Meléndez Fraguada impugnó la convocatoria ante la Junta de Apelaciones del Fondo e incluyó los mismos señalamientos contenidos en la carta de impugnación que le había remitido al Administrador del Fondo. La Junta de Apelaciones emitió una resolución mediante la cual le solicitó a la señora Meléndez Fraguada que sometiera una exposición clara y detallada de su apelación.
La señora Meléndez Fraguada sometió el 31 de enero de 2001, un escrito en el que señaló que en el proceso el Fondo había infringido el Art. 9, Secs 9.1 y 9.4 a la 9.8 del Reglamento de Personal de la Corporación del Fondo del Seguro del Estado de 1 de marzo de 1983, que establecen lo relacionado con el proceso de reclutamiento, selección y nombramiento. Ésta añadió que había sido discriminada en el proceso de entrevista, debido a que el entrevistador le había indicado su preferencia de reclutar un abogado y debido a su afiliación política, ya que ella pertenecía al Partido Popular Democrático. La apelante basó su aseveración de discrimen en que ella había participado en entrevistas en alrededor de ocho convocatorias, en las cuales habían seleccionado a personas identificadas con el Partido Nuevo Progresista.
El Fondo contestó la apelación, negó todas las imputaciones allí contenidas y solicitó la desestimación de la apelación.
Posteriormente, la señora Meléndez Fraguada presentó una apelación enmendada en la que señaló que tenía una maestría en Administración de Empresas, con especialidad en Gerencia, de la Universidad de Phoenix, y un bachillerato en Administración de Empresas; que en el proceso de reclutamiento y selección se certificaron diez candidatos, entre los cuales ella figuraba, mientras que la persona seleccionada, Brenda Liz Martínez López, no figuraba en la certificación de elegibles; que recibió la citación para la entrevista el mismo día de la cita, por lo que la entrevista con el Lie. José Padilla Díaz tuvo que cambiarse para el día siguiente; y que la urgencia para la entrevista se debió a que el licenciado Padilla Díaz se iba de viaje al otro día y tenía que hacer la selección antes del período de veda electoral, que en ese año comenzaba el 7 de septiembre de 2000.
La apelante también señaló que dos de los candidatos que figuraban en la certificación de elegibles fueron eliminados; uno, porque aceptó otra posición en ascenso, y el otro, porque expresó no estar interesado en el puesto. Por tal razón, el Subadministrador del Fondo solicitó la adición de dos candidatos en la certificación de elegibles. Como consecuencia de esa solicitud, se incluyó a la señora Yazmín Maldonado Velázquez y a la señorita Brenda Liz Martínez López, quien ocupaba el último lugar en la certificación y que finalmente fue seleccionada.
La apelante también adujo que la preparación académica de la señorita Martínez López consistía de un Juris Doctor de la Universidad Católica, algunos estudios de maestría en Justicia Criminal de la Universidad Interamericana y un bachillerato en Ciencias Sociales de la Universidad de Puerto Rico; y que su experiencia de trabajo, previo a su selección, había sido como secretaria administrativa en Teen Challenge de Puerto Rico.
La señora Meléndez Fraguada argumentó en su apelación que el Fondo había violado el debido proceso de *1227 ley, al no observar las disposiciones de ley dispuestas en el Reglamento de Personal que regía el procedimiento de reclutamiento y al actuar de manera discriminatoria con el único interés de favorecer a una candidata sobre otros candidatos igual o superiormente calificados para el puesto. A esos efectos, la señora Meléndez Fraguada indicó que el Lie. Padilla Díaz incorporó un criterio de selección no incluido en la convocatoria, al expresarle a la apelante que la persona seleccionada tenía que ser abogada, aun cuando ese requerimiento no figuraba entre los requisitos mínimos del puesto y tuvo el efecto de descalificar a la apelante y hacer del procedimiento uno pro forma, a la vez que le aseguraba el puesto a la única candidata que reunía ese requisito, la cual había sido añadida a la lista de elegibles a última hora y que figuraba en el último lugar en la certificación.
Asimismo, la señora Meléndez Fraguada hizo referencia al Art. 9.4, inciso 1, del Reglamento de Personal del 1ro de marzo de 1983, que en el Reglamento 6226 corresponde a la Sec. 13.4, sobre Exámenes. La Sec. 13.4 del Reglamento 6226 establece que “el reclutamiento de la Corporación se llevará a cabo a través de un proceso en virtud del cual los aspirantes compitan en igualdad de condiciones y sin discrimen por razones ajenas al mérito, mediante exámenes para cada clase de puesto. [Ejstos podrán consistir de pruebas escritas, orales, físicas, de ejecución, evaluaciones de experiencia y preparación, resultados de adiestramientos o una combinación de éstos”. Según la apelante, el Fondo violó este artículo, debido a que la candidata ya estaba seleccionada previo al proceso de reclutamiento. Ésta alegó que la señora Martínez López hizo una admisión de que el licenciado Padilla Díaz la había entrevistado hacía dos meses, lo que evidenciaba que el procedimiento estaba totalmente viciado, ya que la persona reclutada para el puesto había sido seleccionada dos meses antes de la convocatoria.
La señora Martínez López compareció a la Junta de Apelaciones como parte interventora.
El Fondo contestó la apelación enmendada en la que negó las imputaciones y levantó como defensa la presunción de validez de las acciones tomadas por el titular de la agencia, cuya selección del personal es parte de su acción administrativa y gerencial.
La Junta de Apelaciones llevó a cabo una vista y el 5 de febrero de 2004, emitió una resolución mediante la cual desestimó la causa de acción contra la parte interventora, señora Martínez López, basándose en que ésta ocupaba en esos momentos otro puesto distinto al puesto impugnado. Asimismo, la Junta de Apelaciones le ordenó a la parte apelante que indicara el nombre de la persona que ocupaba el puesto objeto de la impugnación, que le notificara a esa parte copia de todos los escritos presentados en el caso y que le notificara de su derecho a intervenir en el pleito.
La apelante solicitó reconsideración de esta resolución a la Junta de Apelaciones, pero le fue denegada.
Inconforme con esa determinación, la señora Meléndez Fraguada recurrió ante nos para revisar la resolución emitida por la Junta de Apelaciones (KLRA-04-00208). En su recurso, ésta señaló que la Junta de Apelaciones había errado al desestimar la apelación contra la parte interventora por carecer de un remedio contra esta parte y por tomarse académico el recurso contra esa parte.
La parte interventora solicitó la desestimación del recurso de revisión, basándose en que este Tribunal carecía de jurisdicción para revisar la resolución de la Junta de Apelaciones, por tratarse de una resolución interlocutoria. La parte recurrente se opuso a la desestimación y expuso que, a pesar de que se trataba de una resolución parcial, esa resolución disponía de la controversia, para efectos prácticos. Esta también añadió que lo que estaba en controversia era un procedimiento de reclutamiento y selección totalmente viciado y que el hecho de que la persona impugnada hubiese sido nombrada en otro puesto, no tenía el efecto de sanear el procedimiento.
Este Tribunal denegó la desestimación del caso y señaló que, similar a lo que ocurre en un pleito civil *1228 ordinario en que se considéra como sentencia final la decisión que deniega la intervención de un tercero como parte, igual tratamiento debía dársele a un dictamen similar en el foro administrativo, a tenor de la See. 4.2 de la Ley de Procedimiento Administrativo Uniforme, Ley 170 de 12 de agosto de 1988, 3 L.P.R.A. see. 2172. Asimismo, este Tribunal le ordenó al Fondo y a la parte interventora que mostraran causa por la cual no debíamos revocar la decisión final recurrida.
Previo a nuestra orden de mostrar causa emitida el 20 de agosto de 2004, la Junta de Apelaciones emitió otra resolución el 5 de agosto de 2004, mediante la cual desestimó la apelación y ordenó el archivo con perjuicio de la reclamación, basándose en que el puesto impugnado se encontraba vacante, por lo que la Junta de Apelaciones carecía de un remedio para concederle a la señora Meléndez Fraguada. La Junta de Apelaciones indicó que el remedio que podía concederle a ésta en una acción de impugnación de convocatoria era declarar vacante el puesto y, debido a que el puesto se encontraba vacante, la Junta determinó que el recurso se había tomado académico. Asimismo, la Junta de Apelaciones indicó que no podía ordenar el nombramiento de la señora Meléndez Fraguada al puesto impugnado ni podía ordenar una nueva convocatoria para llenar el puesto.
La señora Meléndez Fraguada solicitó reconsideración de la resolución, pero le fue denegada.
II
La señora Meléndez Fraguada recurrió ante nos para revisar esta resolución. Esta adujo que la Junta de Apelaciones del Fondo erró al desestimar la apelación contra la parte interventora por carecer de un remedio contra esa parte, debido a que la parte interventora había sido nombrada en otro puesto distinto al impugnado, y por tomarse académico el recurso por el hecho de que el puesto impugnado se encontraba vacante y en proceso de cubrirse mediante el procedimiento de convocatoria (KLRA-04-00834).
La recurrente solicitó la consolidación de los recursos, la cual concedimos.
En su recurso de revisión, la recurrente expuso los siguientes argumentos. En primer lugar, señaló que el proceso de selección estuvo viciado y fue pro forma, debido a que la persona finalmente seleccionada ya había sido seleccionada dos meses antes de la convocatoria. En segundo lugar, adujo que el director de la Oficina de Contratación, Lie. Padilla Díaz, había añadido un criterio de selección no incluido en la convocatoria, que requería que la persona seleccionada fuese abogada, cuyo efecto era asegurarle el puesto a la única candidata que reunía ese requisito. En tercer lugar, indicó que no había sido seleccionada por razón de discrimen por afiliación política. En cuarto lugar, argumentó que el caso no se había tomado académico, porque la controversia giraba en tomo a si el Fondo había cumplido con los requisitos dispuestos en su Reglamento de Personal, para lo cual la Junta de Apelaciones tenía que pasar juicio sobre el proceso de nombramiento impugnado. En quinto lugar, la recurrente argüyó que de anularse el procedimiento, la interventora no tendría derecho a ocupar el puesto para el que fue seleccionada y tampoco tendría derecho al otro puesto de carrera para el que fue designada posteriormente, ya que el nombramiento de la interventora fue nulo y esa nulidad no quedó subsanada por el hecho de que posteriormente la interventora hubiese sido nombrada y ascendida a otro puesto. En sexto lugar, la recurrente planteó que la persona seleccionada guardaba una relación de parentesco con el administrador del Fondo para esa fecha, señor Juan Martínez, lo cual fue determinante en su selección y reclutamiento, por lo que había habido una violación a la Ley de Etica Gubernamental, Ley 12 de 24 de julio de 1985, 3 L.P.R.A. see. 1822 et seq., la cual prohíbe el nepotismo.
El Fondo compareció a mostrar causa y presentó su alegato en el que intentó rebatir los señalamientos esbozados por la parte recurrente.
En cuanto al señalamiento de que la parte interventora había sido seleccionada porque poseía un Juris Doctor, el Fondo discutió la diferencia entre los requisitos mínimos y los requisitos óptimos en una convocatoria y señaló que en el caso de autos, la convocatoria incluía como requisitos óptimos tener una *1229 maestría, un Juris Doctor o un grado en medicina. Dado que la parte interventora tenía una preparación académica de Juris Doctor y que el oficial de contratación manejaría contratos como parte de sus funciones esenciales, el Fondo argumentó que no era ilegal que para ese puesto la persona que entrevistara a los candidatos para el puesto y eventualmente la autoridad nominadora prefiriera que el requisito de preparación académica fuese el de Juris Doctor, ya que como abogada la persona estaría mejor preparada académicamente para redactar, analizar y editar contratos.
Según el Fondo, el requisito de Juris Doctor era un requisito de tipo preferencial que se estableció en la propia convocatoria y preferir este requisito que poseía la interventora y que no poseía la recurrente, no viciaba el proceso de selección que se hizo para el puesto de Oficial de Contratación. Por tal razón, el Fondo señaló que no era correcta la aseveración de la parte recurrente en cuanto a que se había incorporado un criterio de selección que no estaba incluido en la convocatoria, ya que el requisito de Juris Doctor no era un requisito mínimo de la convocatoria, pero sí era un requisito alterno de carácter preferencial.
De igual forma, el Fondo señaló que si un candidato posee unos requisitos superiores a los mínimos establecidos para un puesto, la agencia no está obligada a seleccionar a un candidato que posea los requisitos mínimos; que lo importante es que los candidatos que se certifiquen en un registro de elegibles cumplan con los requisitos mínimos de la convocatoria, pero que si dentro de ese registro se encuentran candidatos con requisitos superiores a los mínimos de la convocatoria, tales candidatos poseen una ventaja no discriminatoria sobre los restantes candidatos del registro.
El Fondo también señaló que el proceso de selección de un puesto no era lo mismo que el proceso de cualificación para ese puesto, debido a que los requisitos mínimos de un puesto son para crear el registro de elegibles para determinado puesto a base de candidatos que cualifiquen o cumplan con los requisitos del puesto. El Fondo argüyó que una persona puede ser incluida en un registro de elegibles de cierto puesto con la puntuación más alta, pero eso no representa necesariamente que esa persona será la persona seleccionada para el puesto; que usualmente la selección se culmina con una entrevista de los candidatos certificados; que el hecho de que la recurrente hubiese sido incluida en el registro de elegibles en determinada posición y con determinada puntuación, no significaba que la recurrente fuese la persona que necesariamente tenía que ser seleccionada para el puesto; que en el proceso de selección entraba el criterio de la entrevista y que si el entrevistador consideraba que la persona que se interesaba para el puesto debía tener una educación universitaria como abogado, tal criterio favoreció a la interventora, pero no a la recurrente.
En cuanto al hecho de que se añadieron posteriormente dos candidatas al registro de elegibles, el Fondo señaló que nada de ilegal había en ello, debido a que lo que buscó la autoridad nominadora fue que el registro de elegibles estuviese configurado adecuadamente con el número de personas.
Por otro lado, el Fondo señaló que tanto la interventora como la parte recurrente cumplían con los requisitos para competir para el puesto de Ejecutivo de Contratación I, ya que la primera poseía un Juris Doctor y la segunda tenía una maestría de una universidad reconocida, por lo que la controversia no podía girar en tomo a las cualificaciones que tuvieran las partes para competir por el puesto, sino en el proceso de selección, puesto que el factor decisivo fue la preparación académica “dirigida a cuestiones de leyes”.
Por otro lado, el Fondo también rebatió lo señalado por la parte recurrente en cuanto a que la selección para el puesto estuvo matizada por consideraciones políticas, debido a que la recurrente era simpatizante del Partido Popular Democrático, mientras que la interventora era —por imputación — , simpatizante del Partido Nuevo Progresista y quienes seleccionaron a la interventora eran funcionarios bajo una administración de este último partido. A esos efectos, el Fondo señala que el hecho de que la recurrente fuese simpatizante del P.P.D. y no fuese seleccionada para el puesto, no representaba necesariamente que hubiese sido discriminada políticamente. Por tal razón, el Fondo indica que la recurrente tendría que probar ese discrimen con evidencia sustancial.
*1230 Asimismo, el Fondo descartó las imputaciones de nepotismo —de que la interventora era familia del subadministrador del Fondo, por ambos tener el mismo apellido Martínez — , al señalar que la recurrente no sustentó esas imputaciones en su recurso.
Respecto al señalamiento de la recurrente de que si la interventora no tenía derecho originalmente a ocupar el puesto de Oficial de Contratación I —para el que fue seleccionada — , ésta tampoco tendría derecho a ocupar el puesto al que fue asignada posteriormente, el Fondo argumenta que la recurrente no tiene legitimación activa para cuestionar o impugnar un nombramiento de un puesto para el cual no compitió. El Fondo añade que la interventora fue nombrada posteriormente —el 16 de abril de 2003 — , para el puesto de Ejecutivo de Contrataciones III, puesto 3691-G, circulado en la Convocatoria 122-03- Gerencial, bajo una administración bajo el Partido Popular Democrático, lo que implica que la administración del Fondo ascendió de puesto a una supuesta simpatizante del P.N.P.
De otro lado, el Fondo defiende la decisión tomada por la Junta de Apelaciones en cuanto a declarar académico el recurso de apelación, debido a que el puesto en cuestión se encontraba vacante, ya que el remedio que la Junta de Apelaciones le podía conceder a la parte recurrente era precisamente declarar vacante el puesto de Oficial de Contratación I, condición que ya era existente.
Finalmente, el Fondo destacó la presunción de legalidad y corrección que cobija a las decisiones de las agencias administrativas, por lo que la parte recurrente tendría que probar que la agencia actuó de forma arbitraria o caprichosa.
Por su parte, la parte interventora presentó su alegato en el que reiteró básicamente los mismos argumentos que esgrime el Fondo en su alegato. Ésta señala que, a pesar de tener el mismo apellido del señor Juan Martínez, ella no tiene parentesco ni relación de amistad con éste.
La parte interventora también indica que el requisito de Juris Doctor estaba incluido en la convocatoria, por lo que no era correcta la aseveración hecha por la parte recurrente respecto a que se había incorporado un criterio de selección que no estaba incluido en la convocatoria.
La interventora señala, además, que había cumplido con los requisitos mínimos de la clase de Ejecutivo de Contratación III y que había obtenido ese puesto a través de la Convocatoria 122-03 del 2 de diciembre de 2003. Por tal razón, aun cuando se determinara que su nombramiento como Oficial de Contratación I fue nulo, no podría anularse la experiencia adquirida en ese puesto. Además, la parte interventora niega que la parte recurrente tenga legitimación activa para cuestionar su posterior nombramiento para el puesto de Oficial de Contratación III, cuando la parte recurrente no participó en la convocatoria para ese puesto.
De igual forma, la parte interventora señala que, a pesar de que no existía una causa de acción en su contra, ella solicitó voluntariamente intervenir en el caso porque podía verse afectada con la decisión final del caso. Sin embargo, la parte interventora indica que como ya no ocupa el puesto objeto de impugnación, ella no tiene ningún derecho que le pueda ser afectado, por lo que la controversia se tomó académica en cuanto a lo que a ella respecta. Por tal razón, la interventora sostuvo que no debía ser obligada a permanecer en el caso ante la Junta de Apelaciones.
III
Este caso nos presenta dos controversias. La primera consiste en determinar si fue correcta la resolución de la Junta de Apelaciones al desestimar el caso contra la parte interventora, por ésta haber pasado a ocupar otro puesto distinto al puesto impugnado. Resolvemos que fue correcta. Veamos.
La Sec. 1.3 de la Ley de Procedimiento Administrativo Uniforme, Ley 170 de 12 de agosto de 1988, 3 L.P.. *1231 R.A. sec. 2102, define “Interventor” como “aquella persona que no sea parte original en cualquier procedimiento adjudicativo que la agencia lleve a cabo y que haya demostrado su capacidad o interés en el procedimiento.” Por otra parte, la See. 3.5 de esa ley, 3 L.P.R.A. see. 2155, establece los requisitos para solicitar la intervención y dispone lo siguiente:

“Cualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento. La agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración, entre otros, los siguientes factores:

(a) Que el interés del peticionario pueda ser afectado advérsamente por el procedimiento adjudicativo.

(b) Que no existan otros medios en derecho para que el peticionario pueda proteger adecuadamente su interés.

(c) Que el interés del peticionario ya está representado adecuadamente por las partes en el procedimiento.

(d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.

(f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

(g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.

La agencia deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención. ” (Énfasis suplido.)
En la Ley de Procedimiento Administrativo Uniforme, el interventor ha sido elevado a la calidad de parte, una vez se le reconozca como tal interventor. San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. _ (2001), 2001 J.T.S. 20, pág. 858.
En el caso de autos, la Junta de Apelaciones le ordenó a la parte recurrente notificarle a la persona que ocupaba el puesto impugnado, por si ésta deseaba intervenir. La parte recurrente así lo hizo. La parte interventora solicitó voluntariamente intervenir en la apelación incoada por la parte recurrente, debido a que su interés en el puesto de Oficial de Contratación I podía verse seriamente afectado. Sin embargo, debido a que la parte interventora ya no ocupa el puesto de Oficial de Contratación I, para el que había sido seleccionada bajo la convocatoria impugnada, y debido a que el puesto está vacante, Una determinación de la Junta de Apelaciones favorable a la parte recurrente, ya no podría afectar el interés de la parte interventora. Por tal razón, la Junta de Apelaciones decidió correctamente cuando desestimó la apelación contra la parte interventora. 
Por consiguiente, confirmaremos la resolución de la Junta de Apelaciones que desestimó la apelación contra la parte interventora.
La segunda controversia ante nos consiste en determinar si fue correcta la resolución de la Junta de Apelaciones que desestimó la apelación, basándose en que el recurso se había tomado académico, debido a que al quedar el puesto vacante, ya ese organismo apelativo no podía concederle un remedio a la parte recurrente. *1232 Resolvemos que no fue correcta la decisión de la Junta de Apelaciones.
Lo que cuestionó la parte recurrente fue el proceso mediante el cual el Fondo seleccionó a la interventora Martínez López para ocupar el puesto de Oficial de Contratación I. El hecho de que el puesto impugnado esté vacante, no convierte el recurso en académico, por la Junta de Apelaciones carecer de un remedio para concederle a la recurrente. Sería académico si el Fondo tuviese que hacer una nueva convocatoria para llenar el puesto. Sin embargo, el remedio que procede en este caso —de prevalecer la recurrente en su apelación luego de probar su caso mediante evidencia presentada ante la Junta de Apelaciones — , no es que el Fondo emita una nueva convocatoria para llenar el puesto, sino que el Fondo deberá seleccionar a la persona que va a ocupar el puesto de Oficial de Contratación I de las personas que figuren en el registro de elegibles que ya obra en su poder y que fue producto de la convocatoria impugnada. Ese remedio no significa que el Fondo tenga que otorgarle necesariamente el puesto de Oficial de Contratación I a la parte recurrente, sino que tendría que considerarla en su proceso de selección como otra candidata más a ocupar el puesto entre los candidatos que figuran en el registro de elegibles. De no ser así y el Fondo hacer una nueva convocatoria, la recurrente podría no recaer en el registro de elegibles y quedar privada de la oportunidad de que se le considere para el puesto.
Si la apelación se convirtiera en académica por el hecho de que la persona seleccionada para el puesto cambiara a otro puesto y el puesto impugnado quedara vacante, la agencia podría utilizar ese mecanismo para evadir un procedimiento en el que se le cuestionara su proceso de selección para llenar un puesto impugnado.
Procede, pues, devolver el caso a la Junta de Apelaciones para que la parte aquí recurrente pueda presentar su prueba para probar las irregularidades en el proceso de reclutamiento y selección para el puesto de Oficial de Contratación I impugnado, que asevera en su apelación ante ese organismo apelativo.
Con estos antecedentes, se confirma la resolución que desestimó la apelación contra la parte interventora, se revoca la resolución que desestimó y archivó con perjuicio la apelación y se devuelve el caso a la Junta de Apelaciones para la continuación de los procedimientos, conforme a lo aquí resuelto.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Yélez
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 65
1. A pesar de que la parte recurrente hizo referencia al Reglamento de Personal de la Corporación del Fondo del Seguro del Estado de 1 de marzo de 1983, lo cierto es que este reglamento fue sustituido por el Reglamento de Personal para los Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado, Reglamento 6226 de 11 de enero de 2002. El Reglamento 6226 es el aplicable al caso de autos, debido a que la convocatoria del puesto impugnado fue abierta el 31 de julio de 2000.
2. No obstante nuestra decisión, a la parte interventora podría requerírsele comparecer ante la Junta de Apelaciones para prestar testimonio sobre el proceso mediante el cual fue reclutada.